WK/ABS:SWR
F. #2018R0124

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ JUN - 1 2018 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

GARY PERESIPER,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. **CR 18 280**

(T. 18, U.S.C., §§ 371, 982(a)(7), 982(b)(1) and 3551 et seq.; T. 21, U.S.C., § 853(p))

MAUSKOPF, J.

ORENSTEIN, M.J.

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    Background

    A.    The Medicare Program

        1.    The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years old or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

        2.    Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

        3.    Medicare was divided into multiple parts. Medicare Part B covered the costs of physicians' services and outpatient care, including occupational therapy. Generally, Medicare Part B covered these costs only when, among other requirements, the services were

medically necessary, ordered by a physician, actually rendered and not induced by the payment of remuneration.

4. Medical providers and suppliers that sought to participate in Medicare Part B and to bill Medicare for the cost of their treatment of Medicare beneficiaries and related benefits, items and services were required to apply for and receive a provider identification number ("PIN") or provider transaction access number ("PTAN"). The PIN/PTAN allowed medical providers and suppliers to submit bills, known as claims, to Medicare to obtain reimbursement for the cost of treatment and related health care benefits, items and services that they had supplied and provided to beneficiaries.

5. A medical provider was required to be enrolled in Medicare in order to submit claims. In order to enroll in the Medicare program, a medical provider was required to enter into an agreement with CMS in which the provider agreed to comply with all applicable statutory, regulatory and program requirements for reimbursement from Medicare. By signing the Medicare enrollment application, the provider certified that the provider understood that payment of a claim was conditioned on the claim and the underlying transaction complying with Medicare regulations, Medicare program instructions and the law, and on the provider's compliance with all applicable conditions of participation in Medicare.

6. Medical providers were authorized to submit claims to Medicare only for services that were medically necessary, actually rendered and not induced by payment of a kickback.

7. To receive reimbursement from Medicare for covered services and items, medical providers were required to submit claims, either electronically or in writing, through Forms CMS-1500 or Forms UB-92. Each claim form required certain information identifying

2

the medical provider submitting the claim, the medical provider rendering the service, the referring physician, the patient and the services rendered. Both claim forms required the provider to certify, among other things, that the services were not induced by kickbacks, were rendered to the patient and were medically necessary.

8. Providers submitted claims to Medicare using billing codes, also called current procedural terminology or "CPT" codes, which specifically identified the medical services provided to beneficiaries.

B. The Defendant and Relevant Individuals and Entities

9. From approximately September 2009 to June 2013, the defendant GARY PERESIPER controlled the following medical clinics (collectively referred to as "the Clinics"), which purported to provide a variety of medical services, including diagnostic testing, to Medicare beneficiaries and submitted claims to Medicare for such services:

(a) Pulmonary Solutions, P.C. ("Pulmonary Solutions"), a New York corporation located at 1007 Brighton Beach Avenue, Brooklyn, New York. PERESIPER was vice president of Pulmonary Solutions from approximately September 2009 through May 2013 and president of Pulmonary Solutions from approximately May 2013 through June 2013.

(b) Multi Care Medical NY PLLC ("Multi Care Medical"), a New York professional service limited liability company located at 1009 Brighton Beach Avenue, Brooklyn, New York. PERESIPER was a member of Multi Care Medical from approximately June 2011 through June 2013.

10. From approximately January 2010 through June 2013, the defendant GARY PERESIPER controlled the following shell companies (collectively referred to as "the Defendant Shell Companies"), which purported to provide management services:

3

  (a) Magna Management Inc. ("Magna Management"), a New York corporation located at 250 Waverly Avenue, East Rockaway, New York. PERESIPER was president of Magna Management from approximately January 2010 through June 2013.

  (b) Tri-Care Management Inc. ("Tri-Care Management"), a New York corporation located at 170 Jeffery Lane, Oceanside, New York. PERESIPER was vice president of Tri-Care Management from approximately September 2011 through June 2013.

  11. Co-conspirators of the defendant GARY PERESIPER owned and operated shell companies (collectively referred to as "Co-conspirator Shell Companies") that purported to provide management, consulting, advertising, marketing, medical support and other commercial services to the Clinics, the Defendant Shell Companies and other entities.

  12. Co-conspirator 1, an individual whose identity is known to the Grand Jury, owned and operated Co-conspirator Shell Companies, including, among others, the following:

  (a) Company A, a New York corporation the identity of which is known to the Grand Jury, which purported to do business at 2955 Brighton 4th Street, Brooklyn, New York, and other locations; and

  (b) Company B, a New York corporation the identity of which is known to the Grand Jury, which purported to do business at 2327 83rd Street, Brooklyn, New York, and other locations.

  13. Co-conspirator 2, an individual whose identity is known to the Grand Jury, owned and operated Co-conspirator Shell Companies, including, among others, Company C, a New York corporation the identity of which is known to the Grand Jury, which purported to do business at 2911 Surf Avenue, Brooklyn, New York, and other locations.

II. <u>The Kickback Conspiracy</u>

14. From approximately November 2010 through June 2013, the defendant GARY PERESIPER, together with others, did knowingly and willfully conspire to pay illegal kickback payments.

15. Specifically, and in part, the defendant GARY PERESIPER, together with others, submitted and caused to be submitted claims to Medicare (the "Claims") for medical services, including diagnostic testing.

16. From approximately November 2010 through June 2013, Pulmonary Solutions submitted approximately $7.7 million in claims to Medicare, and was paid approximately $3.5 million in connection with those claims.

17. From approximately January 2012 through June 2013, Multi Care Medical submitted approximately $2.5 million in claims to Medicare, and was paid approximately $1.2 million in connection with those claims.

18. Once the Clinics received payments from Medicare for the Claims, the defendant GARY PERESIPER transferred funds from the Clinics' bank accounts to the Co-conspirator Shell Companies. PERESIPER transferred these funds by check, either directly or via the Defendant Shell Companies' bank accounts, in return for the referral of beneficiaries to the Clinics.

## CONSPIRACY TO PAY HEALTH CARE KICKBACKS

19. The allegations contained in paragraphs one through 18 are realleged and incorporated as if fully set forth in this paragraph.

20. In or about and between November 2010 and June 3, 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendant GARY PERESIPER, together with others, did knowingly and willfully conspire to offer and pay kickbacks, directly and indirectly, overtly and covertly, to persons to induce the referral of Medicare beneficiaries to Pulmonary Solutions, Multi Care Medical, and other medical providers for the furnishing of and arranging for the furnishing of items and services for which payment may be made in whole and in part under Medicare, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

21. In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendant GARY PERESIPER, together with others, did commit and cause the commission of, among others, the following:

### OVERT ACTS

(a) On or about November 16, 2011, PERESIPER wrote check number 1861 in the amount of $1,000 made payable to Company C, and drawn on a TD Bank account number ending in 2679, held in the name of Pulmonary Solutions;

(b) On or about March 27, 2013, PERESIPER wrote check number 1286 in the amount of $4,500 made payable to Company A, and drawn on a TD Bank account number ending in 1823, held in the name of Multi Care Medical;

(c) On or about June 3, 2013, PERESIPER wrote check number 1393 in the amount of $2,000 made payable to Company A, and drawn on a TD Bank account number ending in 1823, held in the name of Multi Care Medical;

(d) On or about June 3, 2013, PERESIPER wrote check number 1394 in the amount of $1,000 made payable to Company B, and drawn on a TD Bank account number ending in 1823, held in the name of Multi Care Medical.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION

22. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(7), which requires any person convicted of a federal health care offense to forfeit property, real or personal, that constitutes, or is derived directly or indirectly from, gross proceeds traceable to the commission of such offense.

23. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

    (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1), to seek forfeiture of any other

property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(7) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
RICHARD P. DONOGHUE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

_____
SANDRA MOSER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

F. # 2018R01024
FORM DBD-34
JUN. 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

GARY PERESIPER,

Defendant.

## INDICTMENT

(T. 18, U.S.C., §§ 371, 982(a)(7), 982(b)(1) and 3551 et seq.;
T. 21, U.S.C., § 853(p))

*A true bill.*

_____
*Foreperson*

*Filed in open court this _____ day,*

*of _____ A.D. 20 ___*

_____
*Clerk*

Bail, $ _____

*Sarah Wilson Rocha, Trial Attorney (718) 254-6366*

9